**MARION–ADAMS SCHOOL CORPORATION, Appellant–Defendant,**

v.

**Paula BOONE, Appellee–Plaintiff.**

No. 06A01–0507–CV–309.

Court of Appeals of Indiana.

Jan. 18, 2006.

Jack G. Hittle, Church, Church, Hittle & Antrim, Noblesville, for Appellant.

Deborah K. Smith, Thorntown, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Marion–Adams School Corporation ("the Corporation") appeals the trial court's award of attorney's fees to Paula Boone pursuant to the Open Door Law.[1] We affirm.

### Issue

The dispositive issue is whether the trial court abused its discretion in awarding Boone attorney's fees pursuant to Indiana Code Section 5–14–1.5–7(f).

### Facts and Procedural History

The Corporation is located in Boone and Hamilton Counties. Boone is a taxpayer in the Corporation's district and a resident of Boone County. In April 2004, the Corporation's board ("the Board") informed the public that its funding had been cut and that it would need to consider budget reductions. At a public meeting[2] on April 19, 2004, the Board presented a list of proposed budget cuts that included the closing of Marion Elementary. A finance committee was formed to study the funding and budget cuts. On May 10, May 20, and May 26, 2004, the finance committee and the Board discussed the proposed budget cuts in closed-door executive sessions that were advertised as discussions regarding collective bargaining.[3] At a public

---

1. Ind.Code ch. 5–14–1.5.

2. Indiana Code Section 5–14–1.5–2(c) defines "meeting" as "a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business."

3. Indiana Code Section 5–14–1.5–2(f) defines "executive session" as "a meeting from which

meeting on May 27, 2004, the Board adopted the proposed budget cuts. Community members circulated a petition against the closing of Marion Elementary.

In June 2004, two newspapers filed formal complaints with the public access counselor alleging that the Board had violated certain provisions of the Open Door Law during the May 26 executive session.[4] On July 26, 2004, the public access counselor issued an advisory opinion stating that the Board had "violated the Open Door Law when it discussed budget issues during an executive session and when it failed to provide memoranda within a reasonable time [thereafter]." Appellant's App. at 29.[5]

On August 25, 2004, Boone filed a complaint for declaratory relief seeking to void the Board's adoption of the proposed budget cuts at the May 27 meeting based on the alleged violations of the Open Door Law at the May 26 executive session. Boone stated that she had "requested, in writing, that the [Corporation] cure the violation by setting aside said decision without the necessity of litigation and [the Corporation] has not acted on said request." Id. at 17. Boone alleged that the Board had "repeatedly violated the Open Door [Law]" and asked the court to "enjoin the [Corporation] from subsequently acting on the subject matters of the budget cuts until there has been a substantial and qualitative reconsideration at a meeting that complies with the [Open Door Law.]" Id. Boone requested attorney's fees based on the Corporation's refusal to cure

its violation of the Open Door Law and prayed for "any and all other proper relief." Id. at 18. In its answer, the Corporation admitted that the May 26 executive session was "erroneously advertised" as a collective bargaining discussion and that no memoranda were made, but asserted that its "violation of the Open Door Law had no impact on the substance of the policy and decision of the Board made in its public meeting on May 27, 2004." Id. at 20, 21, 23.

After a bench trial, the parties submitted proposed findings and conclusions. On June 21, 2005, the trial court entered an order that reads in pertinent part:

FINDINGS OF FACT:

. . . .

13. Prior to the May 10, 2004 public meeting, the finance committee met with the Board in an executive session to discuss the finance committee's recommendations.

14. Greg Willet, a member of the Finance Committee testified that the Superintendent for the Board advised the Finance Committee that they would not be recognized at the public meeting if the proposal they shared at the executive meeting was made public.

15. That the Finance Committee's members were not in total agreement regarding the proposal they were making to the Board.

16. That the Finance Committee did not present their proposal to the public at the May 10, 2004 meeting.

the public is excluded, except the governing body may admit those persons necessary to carry out its purpose." Executive sessions may be held only in limited instances, including for strategy discussions regarding collective bargaining. Ind.Code § 5–14–1.5–6.1(b)(2)(A). Budget discussions are not among those instances listed in the statute.

4. See Ind.Code ch. 5–14–5 (outlining formal complaint procedure).

5. The public counselor also found that the Board had committed a "technical violation" of the Open Door Law by referencing "an incorrect code section" in the public notice for the May 26 executive session. Appellant's App. at 28.

17. That the Board met again with the Finance Committee on May 20, 2004 in an executive session that was advertised for the purpose of "collective bargaining," but again the primary topic was the budget reduction proposal.

. . . .

19. That on May 26, 2004, the Board met once again with the Finance Committee in an executive session that was not open to the public and spent approximately eight hours discussing the proposed cuts and going through the budget line item by line item.

20. On May 27, 2004 the Board met in a public meeting and a Motion was made to adopt the proposed budget cuts. With the exception of the item designated as "o"—closing of Marion Elementary School, the budget cuts were unanimously adopted. The vote to close Marion Elementary School was four in favor and one opposed.

. . . .

28. That the Board and the Plaintiff have stipulated that the May 26, 2004 meeting was an executive session held in violation of the Open Door Statutes.

. . . .

38. That the [Board] did not cure the violation that occurred in the executive meeting by only taking final action at a meeting that complies with Open Door.

. . . .

42. That the Marion Adams School Corporation's cash balance increased rather than decreased at the end of the 2004 calendar year. The beginning of the year balance was $229,294.00 and the end of year cash balance was $617,235.00.

43. That no study was done to determine whether the budget cuts implemented by the Board were necessary. The Board did not conduct a follow-up review of the decision after the actual revenue numbers were available.

44. That the Board has not involved itself in any educational activities or taken part in any kind of training to increase their knowledge and understanding of the Open Door Statutes.

45. That the Superintendent who was working at Marion Adams School Corporation at the time the cuts were made resigned his position and a new Superintendent has been hired. The Court applauds the hiring of the new Superintendent and is confident that he is doing his best to "right the ship".

46. The Board lacked independent knowledge of their responsibilities as public office holders and placed their reliance on the Superintendent.

47. Many members of the public were against the school closing and members of the community circulated a petition with 1,400 signatures asking for reconsideration of the Board's decision.

48. That the Board did not have sufficient time or sufficient information regarding the facts of the proposed budget at the time they made their decision.

49. That there are remedial benefits gained by setting aside the decision including the ability to review the budget cuts to determine if the same were necessary.

50. That Plaintiff incurred attorney's fees in bringing this action and pursuant to statute plaintiff is entitled to receive an award of reasonable attorney fees if plaintiff prevails and if the public access counselor has issued an opinion.

51. That the attorney fees in bringing this action total $8,447.50.

CONCLUSIONS OF LAW

. . . .

3. That the Defendant, Marion Adams School Corporation violated the Open Door Laws by holding executive sessions on May 10, May 20 and May 26, 2004.

4. That a Public Access Counselor determined by advisory opinion dated July 26, 2004 that the executive meeting of May 26, 2004 was held in violation of the Open Door Laws.

5. That the Defendant, Marion Adams School Corporation is ENJOINED from committing any future violations of the Open Door Laws.

6. That the Board is directed to keep a written memorandum outlining the content of any executive meeting to the extent required by law. The Court believes that the Board is now doing this.

7. That the Board of the Marion Adams School Corporation is ADMONISHED for their repeated violations of the Open Door Law and the Board is reminded that as elected public officials, they have a duty to be knowledgeable of the law as it relates to the requirement that meetings be held in public except for situations which are very limited pursuant to statute.

8. That to the extent the Public Access Counselor's Office offers training and/or educational programs for governing bodies in the area of Open Door Laws, the Board is Ordered to arrange and participate in such training and to provide proof of same to counsel for the Petitioner and the Court within 180 days.

9. That the Court finds that although the vote to pass the budget cuts occurred at the public meeting of May 27, 2004, that the Board did not cure the violation of the Open Door Law merely by taking final action at the public board meeting.

10. That the Board had met on no less than three separate occasions over a 30–day period in executive sessions with one meeting continuing for in excess of eight hours and it is clear that the Board relied upon information contained in these meetings to reach the conclusions they did in the public meeting.

11. That it is appropriate for the Court to consider declaring void the decision made at the May 27, 2004 meeting as it relates to the issue of the budget cuts.

12. The Court concludes that the violation of the Open Door Law affected the substance of the final decision while at the same time denying public access to the meetings in which the public had a right to observe and record.

13. There was evidence that the Finance Committee was refused access to the May 10, 2004 public meeting where they were prepared to share the findings of their independent investigation.

14. That there was evidence that some members of the public had requested access to the May 26, 2004 meeting and were told the meeting would be an executive session.

15. That the public was prevented knowledge of the public's business as the Board failed to provide the public with information that supported the budget cuts and specifically the closing of Marion Elementary.

16. However, the Court concludes that voiding the final decision[ ] is a necessary prerequisite to a substantial reconsideration of the subject matter. The Board has also made a compelling argument against setting aside or voiding the decision of the Board and rendering the School system in what could be an untenable position. Instead the Court orders the Board to reconsider the closing of Marion Elementary by conducting a public meeting and taking a public vote on whether or not Marion Elementary School should be reopened for School year 2006–2007 and to take such action, after appropriate public notice and following publication of this Order together

with notice of the meeting date(s) and time(s) and to do so on or before February 1, 2006 and to file a written report with this Court evidencing compliance, on or before March 1, 2006.

17. The Court determines that this is an appropriate and necessary and fair remedy for the violations that have occurred. To the extent that the Board fails to take the vote as directed, and otherwise comply with this Court's order, the decision of the Board to accept the budget cuts and close Marion Elementary will be set aside no later than February 15th, 2006.

. . . .

20. That the Board would most likely benefit from the retention of a private financial consultant that specializes in the area of school finance to determine whether the action of the board was necessary and in the public's best interest.

21. That the remedial benefits gained by effectuating the public policy of the Court's decision outweigh any prejudice likely to accrue to the public if the decision of the Board is ultimately reversed. Circumstances may have changed and the Board is now aware that they did not conduct themselves appropriately.

22. The Defendant is Ordered to pay the Plaintiff's attorney's fees as provided by statute in the amount of $8,447.50 within 120 days of the date of this Order. The Court does not have to set aside the Board's decision or render it void in order to award attorney fees.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Judgment is granted in favor of the Plaintiff and against the Defendant[.]

*Id.* at 3–14.

### Discussion and Decision

██ The Corporation appeals the trial court's award of attorney's fees to Boone.

"The general rule in Indiana and other states is that each party to litigation must pay his own attorney fees. However, an award of attorney fees may be authorized by contract, rule, statute, or agreement." *Morgan County v. Ferguson,* 712 N.E.2d 1038, 1043 (Ind.Ct.App.1999) (citation omitted). Here, an award of attorney's fees is authorized by the Open Door Law. "We review the trial court's decision to award attorney's fees under an abuse of discretion standard. We will not reverse the trial court's decision to award fees unless the award is clearly against the logic and effect of the facts and circumstances." *Gary/Chicago Airport Bd. of Auth. v. Maclin,* 772 N.E.2d 463, 470 (Ind. Ct.App.2002) (citation omitted).

Indiana Code Section 5–14–1.5–7(f) states:

> In any action filed under this section, a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation to the prevailing party if:
>
> (1) the plaintiff prevails; or
>
> (2) the defendant prevails and the court finds that the action is frivolous and vexatious.

> The plaintiff is *not* eligible for the awarding of attorney's fees, court costs, and other reasonable expenses *if the plaintiff filed the action without first seeking and receiving an informal inquiry response or advisory opinion from the public access counselor, unless the plaintiff can show the filing of the action was necessary to prevent a violation of this chapter.*

(Emphases added.)

██ It is undisputed that Boone prevailed at trial. It is also undisputed that

the newspapers sought and received an advisory opinion from the public access counselor before Boone filed her complaint, but that Boone herself did not. The Corporation asserts that Boone was required to do so under the statute and that the trial court erred in determining otherwise. We need not resolve this issue of first impression,[6] however, because we conclude that Boone showed that the filing of the action was necessary to prevent a violation of the Open Door Law. The statute allows recovery of attorney's fees pursuant to either provision.

The primary purpose of Boone's complaint for declaratory relief was to void a decision by the Board that was based in whole or in part on past violations of the Open Door Law. *See* Ind.Code § 5–14–1.5–7(a) (authorizing action to "declare void any policy, decision, or final action . . . that is based in whole or in part upon official action taken at any executive session in violation of" Open Door Law). That being said, however, Boone also alleged that the Board had "repeatedly violated" the Open Door Law and that the Corporation had refused her written request to cure the violation found by the public access counselor. Additionally, Boone asked the trial court to enjoin the Corporation from taking further action on the budget cuts pending reconsideration of the matter at a meeting conducted in compliance with the Open Door Law.

After hearing the evidence presented by the parties, the trial court found that the Board had repeatedly violated the Open Door Law and "lacked independent knowledge of their responsibilities as public office holders[.]" Appellant's App. at 9. The court enjoined the Corporation from committing future violations of the Open Door Law,[7] admonished the Board for its past violations, and ordered the Board to undergo relevant training and reconsider its budget cuts at an appropriately advertised public meeting. Although Boone did not specifically allege, and the trial court did not specifically find, that the filing of Boone's action was necessary to prevent a violation of the Open Door Law, we believe that the trial court's order amply supports such a determination.[8] Implicit in the issuing of the injunction is a determination by the trial court of the threat of future violations.

■ The Corporation contends that "[t]here was no evidence of any future violations, nor any evidence of any threatened violations" of the Open Door Law. Appellant's Reply Br. at 4. We are unable to review the merits of the Corporation's contention, however, because it chose not to submit a transcript of the evidence with its appeal.[9] It is a cardinal rule of appellate review that the appellant bears the burden of showing reversible error by the record, as all presumptions are in favor of the trial court's judgment. *Martin v. Martin,* 771 N.E.2d 650, 655 (Ind.Ct.App.

**6.** Resolution of this issue would involve the interpretation of the statute, a pure question of law subject to de novo review. *See Alexander v. PSB Lending Corp.,* 800 N.E.2d 984, 995 (Ind.Ct.App.2003), *trans. denied* (2004).

**7.** The Corporation characterizes the injunction as "gratuitous" but does not appeal it. Appellant's Br. at 8.

**8.** *Cf. Hinojosa v. Bd. of Pub. Works & Safety for City of Hammond,* 789 N.E.2d 533, 549

(Ind.Ct.App.2003) (upholding award of attorney's fees where plaintiff alleged and trial court found that filing of action was necessary to prevent future violations of Open Door Law), *trans. denied* (2004).

**9.** The Corporation states that it "has not asked for an evidentiary transcript to be prepared for this Appeal, because [it] believes the operative facts are not in dispute." Appellant's Br. at 4.

2002). The record before us indicates that the trial court heard evidence that reflected poorly on the Board's knowledge of and past compliance with the Open Door Law and raised sufficient doubts regarding future compliance to merit an injunction, an admonishment, and remedial tutoring by the public access counselor. Absent a transcript, the Corporation cannot establish that the trial court's fears are unfounded. We therefore conclude that Boone showed that the filing of her action was necessary to prevent a future violation of the Open Door Law and that the trial court did not abuse its discretion in awarding her attorney's fees pursuant to Indiana Code Section 5–14–1.5–7(f).

Affirmed.

NAJAM, J., and BARNES, J., concur.